

**SO ORDERED,**

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | |
| CLINTON LEE DAVIDSON | CASE NO.: 18-10014 |
| DEBTOR | CHAPTER 7 |

| | |
|---|---|
| ONE SOURCE FORMS AND LABELS, INC, and CLINTON LEE DAVIDSON, INDIVIDUALLY and D/B/A ONE SOURCE FORMS AND LABELS | PLAINTIFFS |
| V. | ADV. NO. 18-01015 |
| AMY CALLAHAN and TIMOTHY R. CALLAHAN And JOHN DOES 1-5 | DEFENDANTS |

### MEMORANDUM OPINION AND ORDER

This matter came before the Court for hearing on January 15, 2019 on the following two motions:

    1.    The Application to Compromise Controversy [Dkt #25] which has been filed in the adversary proceeding *One Source Forms and Labels, Inc. et al. v. Amy Callahan et al.*, Adv. No. 18-01015 ("the adversary proceeding"), and

2.    The Application for Authority to Pay Compensation to Special Counsel ("the Application for Compensation")[Dkt #137] which has been filed in *In re Clinton Lee Davidson,* Case No. 18-10014, the underlying bankruptcy case associated with the adversary proceeding ("the Chapter 7 case").

All interested parties briefed the Court on the relevant issues, and the Court held an evidentiary hearing and heard arguments on January 15, 2019. Due to the interconnectedness of the motions, the Court will address both motions in a single memorandum opinion and order. For the reasons outlined below, the Court finds that both applications should be granted.

## I. JURISDICTION

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (B) (exemptions from property of the estate), and (E) (orders to turn over property of the estate).

## II. FACTS

The relevant facts are largely undisputed. Clinton Lee Davidson ("Davidson") is the former owner of One Source Forms and Labels, Inc. ("One Source"). During his ownership and operation of One Source, Davidson hired Amy Callahan ("Callahan") to handle certain bookkeeping matters for One Source. Over the course of her employment, Callahan engaged in a systematic embezzlement of funds from One Source, ultimately absconding with approximately $494,591.75. Because of the significant losses resulting from Callahan's embezzlement, Davidson elected to liquidate most of his retirement funds and use the proceeds as operating capital for One Source. The liquidated value of the life policy and annuities totaled $366,802.55.

After Callahan's embezzlement was discovered, Davidson terminated her employment on May 5, 2017. On August 13, 2017, Callahan was arrested by officers of the Tupelo Police

Department and charged with felony embezzlement. On March 23, 2018, Davidson and One Source filed a Verified Complaint and Request for Preliminary Injunction against Callahan, her husband ("Timothy Callahan"), and John Does 1-5 in the Lee County Circuit Court. Davidson and One Source sought recovery of the funds Callahan embezzled as well as other remedies. Davidson retained Norma Carr Ruff ("Ruff") of the law firm of Webb Sanders & Williams PLLC to represent him in the state court action.

On January 3, 2018, Davidson filed the instant petition for Chapter 7 bankruptcy. Later, on March 23, 2018, Tim Callahan, through counsel, had the state court action removed to this Court as an adversary proceeding within the Chapter 7 case. At the commencement of the Chapter 7 case, Davidson's legal right to pursue civil remedies against Callahan and the other defendants vested in the bankruptcy estate and fell under the Trustee's control pursuant to well-established bankruptcy law. At the time Davidson filed the Chapter 7 case, he did not list any claims against third parties or retirement accounts in Schedule B. On April 16, 2018, Davidson amended Schedule B to include the adversary proceeding, which he valued at $600,000.00. Davidson has not filed any other amendments indicating the existence retirement accounts or retirement-related assets.

On May 15, 2018, the Court granted the Trustee's Application to Employ Ruff to represent the Trustee in the adversary proceeding without objection from Davidson. [Dkt #84] The Order included language approving Ruff as special counsel to the Trustee "upon the terms and conditions . . . set forth in the Application." *Id.* According to the terms and conditions of the Application to Employ, Ruff proposed a 38% contingency fee. [Dkt #57] On November 29, 2018, Callahan pleaded guilty to one count of embezzlement and was placed on probation and ordered to pay $200,000.00 in criminal restitution. The restitution funds are currently being held in the trust fund

of Callahan's attorney, Jason Herring. On or about that same day, Ruff filed the Application to Compromise Controversy, asserting in relevant part:

> To avoid further litigation, the Trustee and the Defendant have agreed to settle and compromise the controversy/Claim for the sum of $200,000.00 to be paid by the Defendant. The aforesaid settlement sum will be paid to the Trustee upon the approval of this compromise and settlement by the Court in full and complete satisfaction of the Claim against the Defendant. Said settlement sum is currently held in Herring Chapman, PA, IOLTA and will be paid to the Trustee in full within fifteen (15) days of the entry of the order from the Court approving this compromise and settlement and payment of the settlement sum to the Trustee.
>
> As a part of the terms and conditions of this settlement and after all the aforesaid matters are completed, the Trustee and Defendants, Amy Callahan and Tim Callahan will execute mutual releases releasing each other, including their attorneys, officers, agents, employees, and insurers, from all liability arising out of the Claim, including any costs associated with the Claim.

Motion to Approve Compromise and Settlement at ¶ 4-5.

At the same time, Ruff submitted the Application for Compensation, seeking 38% of the $200,000.00 in restitution funds paid by Callahan—an amount equal to $76,000.00.

Davidson opposes both Applications arguing *inter alia* that:

1. The criminal restitution paid by Callahan is not property of the estate. Accordingly, Ruff is not entitled to compensation from it because she was initially hired solely to pursue the civil matter, and the civil matter itself cannot be deemed compromised and settled merely by virtue of the restitution payment.

2. Davidson's original contract with the Firm of Webb Sanders & Williams PLLC required him to pay a retainer of $10,000.00, with the understanding that the firm would be paid a 30% contingency fee for a pre-trial recovery or a 45% fee if the case went to trial. In either case, the $10,000.00 retainer Davidson had already paid would be credited against any amount paid as a contingency fee. Thus, the 38% contingency fee sought by Ruff's Application for Compensation is excessive.

3. The Application for Compensation should be modified to exclude any amounts that are identified as amounts included in a qualified retirement plan.

4. Callahan's payment of criminal restitution does not resolve all the issues raised by Davidson's civil complaint. Therefore, it is inappropriate to approve the compromise and settlement of the adversary proceeding.

The Trustee, through Ruff, responded to Davidson's arguments by questioning Davidson's standing to object to both applications.

## III. DISCUSSION

### A. Davidson's Standing to Raise Objections

As a threshold matter, the Trustee argues that Davidson lacks standing to oppose both the Application to Compromise Controversy and the Application for Compensation. As the Trustee notes, bankruptcy standing is necessarily "quite limited" compared to standing before an Article III court. *Matter of Technicool Systems, Inc.*, 896 F.3d 282, 285 (5th Cir. 2018).

> The narrow inquiry for bankruptcy standing—known as the "person aggrieved" test—is "more exacting" than the test for Article III standing. Rather than showing the customary "fairly traceable" causal connection, a bankruptcy appellant must instead show that he was "directly and adversely affected pecuniarily by the order of the bankruptcy court." In essence, bankruptcy standing requires "a higher causal nexus between act and injury." This restriction narrows the playing field, ensuring that only those with a direct, financial stake in a given order can appeal it.

*Technicool*, 896 F.3d at 385–86.

In *Technicool*, the Fifth Circuit agreed that the owner of a Chapter 7 debtor corporation lacked standing to object to an application by the trustee to employ a law firm. *Id.* at 384. The law firm had previously represented a creditor in the same case to assist the trustee in consolidating claims and piercing the corporate veil against the owner. *Id*. At the time the Application to Employ was filed, the creditor's proof of claim represented 93% of the total claims made against the debtor corporation. *Id.* The owner argued that, but for the creditor's proof of claim, the debtor corporation's assets would exceed its debts, and he would be entitled to any surplus from the estate. *Id.* at 386. The owner also argued that because the law firm represented both the creditor and the trustee, the law firm might fail to disclose any defects in the creditor's proof of claim and rob him of a possible surplus. *Id.* The Fifth Circuit rejected the owner's argument as speculative, holding that the specific purposes for which the law firm had been retained would not affect the court's

determination of the validity of the creditor's claim. Therefore, the representation did not affect the owner's pecuniary interests. *Id.*

The Trustee also points to *In re Matthews*, No. 10-96519-MGD, 2014 WL 1277874 (Bankr. N.D. Ga., Mar. 11, 2014) and the cases cited therein for the general proposition that a Chapter 7 debtor typically lacks standing to object to a trustee's administration of the estate except where a reasonable possibility of a surplus exists.

> [G]enerally, a Chapter 7 debtor lacks standing to contest a settlement on behalf of the estate because the debtor will not receive any distribution from the estate. Thus, the debtor cannot assert a pecuniary interest in the settlement. Courts generally agree that a debtor has no standing to object to the manner in which the trustee administers the bankruptcy estate, except in the case where a surplus is in prospect. The debtor carries the burden of proof of establishing that a "surplus is a reasonable possibility" to allow the court to identify a pecuniary interest.

*Matthews*, 2014 WL 1277874 at *3 (citations omitted).

While an accurate summary of the law as it pertains to standing in Chapter 7 cases, the case at bar is distinguishable from *Technicool*. Here, Ruff, the attorney representing the Trustee now seeking approval to settle and be paid, was previously Davidson's own attorney in the original state court action prior to removal. Also, Davidson's objections to both the Application to Settle Controversy and the Application for Compensation are premised on arguments that the adversary proceeding may produce a surplus if fully litigated to its conclusion. Davidson further argues that the criminal restitution payment is not an asset of the estate and should be delivered to Davidson in its entirety. Davidson's arguments implicate his pecuniary interests in both applications. While those arguments may be meritless, the Court cannot reject them as a basis for standing without considering them *on* the merits.

At the hearing, Davidson raised an opposing argument. Chapter 7 debtors have been allowed standing to object to a settlement where the settlement affected the amount of distribution

to the holder of a nondischargeable claim. *In re Horvath*, 2015 Bankr. LEXIS 654, at *29-30 (Bankr. N.D. Ohio Mar. 3, 2015)(finding the debtor had a sufficient pecuniary interest in the settlement agreement because it would likely impact the amount of funds available to pay a nondischargeable priority tax claim); *see also DeBilio v. Golden (In re DeBilio)*, No. CC-13-1441-TaPaKi, 2014 Bankr. LEXIS 3886, at *8 (B.A.P. 9th Cir. Sept. 11, 2014) (holding the debtor had a pecuniary interest in a settlement and sale in light of a nondischargeable support claim). The Court notes that the Internal Revenue Service has filed a proof of claim in this case (Proof of Claim 4-1) asserting a nondischargeable tax debt in the amount of $20,840.81.

In any event, Davidson's standing at this point is like Schrödinger's cat: both alive and dead until it is considered by the Court. As a result, and for purposes of this opinion, the Court need not decide the issue of Davidson's standing to address both applications at issue here.

### B. Criminal Restitution Award as Property of the Estate

Davidson argues in both objections that the $200,000.00 criminal restitution award paid by Callahan is not property of the bankruptcy estate. If the criminal restitution award is not property of the bankruptcy estate, those funds can neither be viewed as a basis for approving the compromise and settlement nor form the basis for a calculation of any contingency fee award to which Ruff is entitled.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[1] State law determines whether a debtor has a legal or equitable interest in property of the kind sufficient to bring the property into the bankruptcy estate. *Croft v. Lowry (In re Croft)*, 737 F.3d 372, 374 (5th Cir. 2013). After the

---

[1] Hereinafter, all Code sections refer to the Bankruptcy Code contained in Title 11 of the United States Code, unless otherwise noted.

debtor's state law property interests are determined, federal bankruptcy law is applied to establish the extent to which those interests are property of the estate. *Butner v. United States*, 440 U.S. 48, 55 (1979).

To the Court's knowledge, there is no Mississippi law that exempts criminal restitution from judgment or attachment. Further, Davidson has not suggested that a restitution award is exempt. *Compare In re Morawski*, 2013 WL 6198213 (Bankr. N.D. Ill. Nov. 26, 2013)(holding that Illinois law specifically exempted restitution awards made under Illinois's Mandatory Victim's Restitution Act). Rather, Davidson relies on the novel theory that the criminal restitution should be "representative of" the qualified retirement plans that he liquidated prepetition and therefore should be exempt under 11 U.S.C. § 541(b)(7). As the Court understands this theory, Callahan's embezzlement compelled Davidson to liquidate his retirement investments and use the proceeds from that liquidation to fund his business. Davidson argues the funds Callahan embezzled represent two things: (1) funds from Davidson's retirement plans that were liquidated and deposited in his business operating account and (2) money earned from his business that he would have contributed to his qualified plans but for the embezzlement.

The Court is not persuaded. The Code provisions cited by Davidson – §§ 541(b)(7)(A)(i)(1) and 541(b)(7)(A)(ii) – refer to funds withheld by an employer from the wages of employees as payment for contributions to an employee benefit plan under Title I of ERISA or to a deferred compensation plan under 26 U.S.C. § 457 (the Internal Revenue Code). These Code provisions plainly refer to funds held by the employer to be placed in a retirement plan or funds that are presently in a plan. Davidson's broader interpretation that the Code provisions apply to hypothetical funds that he would have placed into a retirement plan had they remained under his

control is purely speculative. In addition, Davidson's argument that the Code provisions apply to funds previously held in retirement plans goes against established law.

The Supreme Court in *Clark v. Rameker* categorically rejected his interpretation. 573 U.S. 122, 129 (2014). There, the Court was confronted with a claimed exemption for then-existing retirement accounts that had been inherited by a debtor who was the sole beneficiary of her deceased mother's IRA account. *Clark*, 573 U.S. at 129.

> In ordinary usage, to speak of a person's "retirement funds" implies that the funds are currently in an account set aside for retirement, not that they were set aside for that purpose at some prior date by an entirely different person. Under petitioners' contrary logic, if an individual withdraws money from a traditional IRA and gives it to a friend who then deposits it into a checking account, that money should be forever deemed "retirement funds" because it was originally set aside for retirement. That is plainly incorrect.

*Id.* at 130.

The theory that funds once held in retirement accounts should retain that characteristic after being withdrawn was rejected by the *Clark* Court. Moreover, Davidson's exemption argument for funds that he could have put in his retirement accounts (but for the embezzlement) is even more of a stretch from the plain language of the Code provisions. In light of *Clark*, the Court concludes that the criminal restitution funds at issue do not represent funds included in a qualified retirement plan. Also, because Davidson has not identified any other basis for exempting the restitution award, the Court concludes that the criminal restitution award is property of the bankruptcy estate.

### C. Application to Settle Controversy

Davidson next argues that it would be improper to approve the Application to Settle Controversy while other issues in the adversary proceeding remain unresolved (including but not limited to the allegations against Tim Callahan). Davidson asserts that, in addition to the $200,000.00 criminal restitution award, the adversary proceeding might also lead to a civil

judgment against Callahan and possibly others. If so, such judgments represent additional assets to be paid into the estate through garnishments and other judgment-recovery mechanisms.

Davidson, however, provides no evidence in support of his argument that overcomes the Trustee's contrary testimony. Under examination by Ruff, the Trustee testified that based on his analysis of the case, neither Callahan nor her husband would likely have any funds to make a meaningful payoff on any civil judgment. The Trustee further opined that there would be significant difficulties in obtaining a judgment against Tim Callahan, as well as difficulties in obtaining and/or collecting a judgment against Callahan herself if she withdrew her guilty plea and took the case to trial. While Callahan was able to work out a non-adjudication in exchange for $200,000.00 in restitution, the Court understands that the restitution funds came primarily, if not entirely, from Callahan's family members.

According to the Trustee's testimony, those family members would not have been willing to finance any criminal restitution or civil settlement greater than $200,000.00. The Trustee further testified that the family members were only willing to finance the restitution based on the resolution of both the criminal and civil matters. Under these circumstances, the Court is persuaded by the Trustee's testimony. A $200,000.00 criminal restitution award in exchange for settling all the civil claims against the adversary proceeding defendants represents the best possible outcome for the unsecured creditors who will receive a sizeable payout as opposed to receiving nothing.

Even Davidson will benefit somewhat from the settlement. Davidson is still entitled to $39,000.00 from his wildcard exemption provided under Miss. Code Ann. § 85-3-1(h). Undoubtedly, this is a disappointing result considering the enormity of what he has lost due to Callahan's actions. But the result is an improvement over any likely outcome from litigating the

adversary proceeding. The Application to Settle Controversy is reasonable and fair and warrants Court approval. Therefore, Davidson's objection is overruled.

### D. Application for Compensation

Finally, Davidson objects to the Trustee's Application for Compensation and raises two arguments. First, he argues that the criminal restitution award is not a part of the bankruptcy estate and that Ruff, who was retained to pursue the civil matter, should not be entitled to compensation from the criminal matter. The Court has already rejected this argument. The criminal restitution award is an asset of the bankruptcy estate, and that asset was obtained as part of Ruff's representation of the estate.

Second, Davidson refers the Court to his original contractual agreement with Ruff and with the law firm of Webb Sanders & Williams, PLLC. According to the terms of that agreement, Ruff was to be limited to a 30% contingency fee award for any recovery obtained before trial. Davidson's original $10,000.00 retainer would also be credited against the recovery before the 30% is applied. Davidson argues that Ruff's time and effort spent on these matters was insufficient to justify an 8% increase in her contingency fee award.

The Code governs the parameters of professional fee agreements, and the Court is very familiar with those provisions and the relevant case law. Professionals have the option to be compensated under either §§ 328(a) or 330(a). *In re Barron*, 325 F.3d 690, 693)(5th Cir. 2003)(*Barron II*). Section 328(a) applies when the court approves a fee as a part of the employment application at the outset of the engagement, while § 330(a) applies when the court has yet to do so. *In re Asarco, L.L.C.*, 702 F.3d 250, 260 (5th Cir. 2012). Under § 328(a), professional fee agreements previously approved by the court can only be reduced if the contract terms were "improvident in light of developments not capable of being anticipated at the time of

the fixing of such terms and conditions." § 328(a). The objecting party must show more than just that the subsequent developments were "unforeseen." *In re Barron* 225 F.3d 583, 586 (5th Cir. 2000)*(Barron I)*; *see also In re ASARCO, L.L.C.*, 702 F.3d at 258 ("[T]he intervening circumstances must have been '*incapable* of anticipation, not merely unanticipated.'")(quoting *Barron II*, 325 F.3d at 693). Even if the bankruptcy court sets the fee by prior approval, "it reserves the power to alter them." *In re Coho Entergy Inc.*, 395 F.3d 198, 204 (5th Cir. 2004).

In this case, the Court, with Judge Jason D. Woodard presiding, previously approved the Trustee's application that employed Ruff according to the 38% contingency fee term. [Dkt #84] As such, the Court's analysis should and would have focused on § 328(a). Davidson, however, has not produced any evidence of subsequent developments that could not have been anticipated by the Trustee and which rendered the contract terms improvident. Davidson's main objection is the belief that Ruff failed to spend a sufficient amount of time to justify a 38% contingency fee. The Fifth Circuit has rejected that argument. *Barron II*, 325 F.3d at 693-95 (holding that fee arrangements approved under § 328(a) may not be altered simply because the fee appears excessive in hindsight at the conclusion of the case); *see also ASARCO*, 702 F.3d at 259 ("[T]he fact that contingency fees may appear excessive in retrospect is not a ground to reduce them because 'early success by counsel is always a possibility capable of being anticipated.'")(quoting *In re Smart World Techs., LLC*, 552 F.3d 228, 235 (2d Cir. 2009)).

Regardless of the lack of evidence offered by Davidson, the Court will not rubber stamp Applications for Compensation solely because a preapproved, employment application contains a fee arrangement. Contrary to the Trustee's position taken at the hearing, the Court does not perform an inquiry under § 328(a) to merely determine timing, i.e., *when* the Trustee may disburse

fees to a professional. While the Court's discretion to alter fee agreements under § 328(a) is more limited than under § 330(a), the Court still may alter the fee.

As to Davidson's contractual argument, he misapprehends the nature of Ruff's contract with the Trustee. The 8% contingency fee increase was not a modification of Davidson's original contract with Ruff and her law firm. Rather, it was an entirely new contract between Ruff and the Trustee acting in his capacity as overseer of the bankruptcy estate. Based on the testimony provided by the Trustee at the hearing, a 38% contingency fee award in an adversary proceeding is within the acceptable range of attorney's fees. Accordingly, Davidson's objection is overruled.

## IV. CONCLUSION

Based on the foregoing analysis, it is hereby **ORDERED** that:

1. The Application to Compromise Controversy [Dkt #25] which has been filed in the adversary proceeding *One Source Forms and Labels, Inc. et al. v. Amy Callahan et al.*, Adv. No. 18-01015 is **APPROVED**; and

2. The Application for Authority to Pay Compensation to Special Counsel [Dkt # 137] which has been filed in *In re Clinton Lee Davidson*, Case No. 18-10014, the underlying bankruptcy case associated with the adversary proceeding, is **APPROVED**.

##END OF ORDER##